**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

|  |  |  |
|---|---|---|
| FERENC K. CSABAI, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO.<br><br>CCB-11-CV-0316 |
| MARTEK BIOSCIENCES CORP., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR THE ENTRY OF SUMMARY JUDGMENT**

Mark D. Gately (Bar #00134)
Scott R. Haiber (Bar #25947)
Andrea W. Trento (Bar #28816)
HOGAN LOVELLS US LLP
Harbor East
100 International Drive
Baltimore, MD  21202
Phone:      (410) 659-2700
Facsimile:  (410) 659-2701
Email:      mdgately@hhlaw.com

*Attorneys for Defendants Martek
Biosciences Corp., Henry Linsert, Jr., Peter
L. Buzy, Steve Dubin, Robert J. Flanagan,
and DSM North America*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Martek Biosciences Corp. ("Martek," or the "Company"); Henry Linsert, Jr., Peter L. Buzy, Steve Dubin, and Robert J. Flanagan (the "Individual Defendants," and, collectively with Martek, the "Martek Defendants"); and DSM North America respectfully submit this Memorandum of Law in support of their Motion to Dismiss or, in the Alternative, for the Entry of Summary Judgment (the "Motion") with regard to the Complaint filed by *pro se* Plaintiffs Ferenc Csabai, John & Margaret Miles, David Smith, Curtis Landsberger, Anna Dale, and Michael Scardigno. For the reasons expressed herein, this Court should grant the Defendants' Motion and dismiss Plaintiffs' Complaint in its entirety, with prejudice.

## I. INTRODUCTION

The Plaintiffs in this action, and the subject matter of their Complaint, should by now be familiar to the Court. On August 28, 2009, Plaintiff Csabai filed the first of what is now seven complaints by the Plaintiffs alleging that Martek and individual Martek directors and officers "fraudulently misrepresented nearly every aspect of [the Company] . . . to the public equity market, from . . . March of 2002 to the present, 2009," in violation of the federal securities laws.[1] Shortly thereafter, substantially identical complaints were filed by each of the other Plaintiffs, each alleging the same pervasive fraudulent scheme by Martek and its corporate insiders. Three of these complaints were dismissed for failure to effect service of process (*Smith*, *Miles*,

---

[1] *Csabai v. Martek Biosciences Corp.*, Civ. No. CCB-09-2280, Compl. [Dkt No. 1] 5 (D. Md. Aug. 28, 2009) ("*Csabai I*"); *see also Landsberger v. Martek Biosciences Corp.*, Civ. No. CCB-09-3389, Compl. [Dkt No. 1] 1 (D. Md. Dec. 16, 2009) (alleging that Martek "fraudulently misrepresented nearly every material aspect [of the Company] . . . to the public equity market from . . . March of 2002 to the present, 2009"). Because the *Csabai I* complaint's pages were not numbered, page references refer to the page numbers provided on the ECF-stamped header on each page of the filed complaint.

1

*Scardigno*),[2] while the other three were dismissed on statutes of limitations grounds and/or for failure to adequately plead securities fraud (*Csabai I*, *Dale*, *Landsberger*),[3] with this Court concluding in the last of these rulings that the "majority of fraudulent acts . . . [were] barred by the five-year statute of repose," while the remaining allegations were "time-barred under the two-year statute of limitations."[4]

Undeterred, these same Plaintiffs have banded back together and filed yet another complaint against Martek and several individual defendants for securities fraud, challenging the same public disclosures that were at issue in the prior complaints, and making essentially the same allegations of fraud that were dismissed in the prior actions.[5] Indeed, the Plaintiffs' alleged "chronological flow of frauds over the years" – set forth in Exhibit A to the Complaint – is apparently devoid of any allegation of fraud taking place more recently than 2008. Not surprisingly, Plaintiffs' rehashed claims have not improved with age: they are subject to an even *stronger* statute of limitations defense, given the passage of time and the absence of any substantially new allegations of fraud in their Complaint, and in any event are barred by

---

[2] *See Smith v. Martek Biosciences Corp.*, Civ. No. CCB-09-2623, Order [Dkt No. 21] (D. Md. Mar. 22, 2010); *Scardigno v. Martek Biosciences Corp.*, Civ. No. CCB-09-2716, Order [Dkt No. 21] (D. Md. Mar. 22, 2010); *Miles v. Martek Biosciences Corp.*, Civ. No. CCB-09-3043, Order [Dkt No. 17] (D. Md. Mar. 16, 2010).

[3] *See Csabai v. Martek Biosciences Corp.*, Civ. No. CCB-09-2280, 2009 WL 5206477 (D. Md. Dec. 23, 2009) [attached hereto as Exhibit A], *aff'd*, 385 Fed. Appx. 298 (4th Cir. 2010); *Dale v. Martek Biosciences Corp.*, Civ. No. CCB-09-3124, 2010 WL 3038951 (D. Md. July 30, 2010) [attached hereto as Exhibit B]; *Landsberger v. Martek Biosciences Corp.*, Civ. No. CCB-09-3389, 2010 WL 3086317 (D. Md. July 30, 2010) [attached hereto as Exhibit C].

[4] *Landsberger*, 2010 WL 3086317, at *3-4; *see* 28 U.S.C. 1658(b) (two-year statute of limitations and five-year statute of repose for private actions under the securities laws).

[5] Plaintiffs have also named DSM North America ("DSM") as a Defendant, apparently on the basis that the recently completed "sale [of Martek] to DSM is phase 3 of the illegal insider payment plan." Compl. 2 & Ex. E. However, as set forth below, Plaintiffs do not allege any basis for holding DSM liable for Martek's alleged fraud under the securities laws.

principles *res judicata* – not only as to the three Plaintiffs whose claims were already dismissed on limitations grounds, but as to *all Plaintiffs and Defendants*.

Of course, as this Court has already recognized, limitations are not the only bar to the Plaintiffs' claims. In dismissing the claims asserted in both *Dale* and *Landsberger* – the two most recent of the Plaintiffs' complaints prior to the institution of the present action – the Court concluded that the plaintiffs "ha[d] not alleged the basic elements of a private claim for securities fraud," with "deficiencies" that "include[d], but [we]re not limited to, a failure to adequately plead scienter, loss causation, and reliance."[6] These same deficiencies – among many others – pervade the instant Complaint, and constitute independent grounds for dismissal. For example, Plaintiffs cannot establish standing because they do not allege that they purchased or sold Martek stock subsequent to the supposed misrepresentations alleged in the Complaint. Similarly, the Complaint does not establish reliance, transaction causation or loss causation because Plaintiffs do not allege that they purchased Martek stock as a result of any misstatements or omissions not barred by limitations. Nor have Plaintiffs adequately alleged a plausible basis for the Court to find scienter, or identified any material misstatements with the particularity required by Rule 9(b).[7]

In sum, Mr. Csabai and his "family, friends and business associates"[8] have had their day in court. Through six prior unsuccessful attempts to plead securities fraud against Martek, the

---

[6] *Landsberger*, 2010 WL, 3086317, at *4; *Dale*, 2010 WL 3038951, at *4 n.5 (Plaintiff "has failed to sufficiently plead the elements of a private securities fraud claim, including, at the very least, scienter, loss causation, and reliance.").

[7] *See generally Csabai I*, Mem. of Law in Support of Defts.' Mot. To Dismiss or, in the Alternative, for the Entry of Summ. J. [Dkt No. 20-1] at 20-27 (Oct. 8, 2009) (the "*Csabai I* MTD"); *Landsberger*, Mem. of Law in Support of Deft. Martek Biosciences Corp.'s Mot. To Dismiss or, in the Alternative, for the Entry of Summ. J. [Dkt No. 9-1] at 11-18 (Mar. 3, 2010) (the "*Landsberger* MTD").

[8] *Csabai I*, Compl. 5.

Plaintiffs repackaged and resubmitted essentially the same allegation that "nearly every material aspect" of Martek was misrepresented to investors, to no avail.[9] Their seventh such attempt is just as deficient, and should meet the same fate. Accordingly, the Court should grant the Defendants' Motion and dismiss the Plaintiffs' Complaint in its entirety. Alternatively, the Court should enter summary judgment in favor of Defendants, as it has done before, because Plaintiffs' claims are barred by limitations.

## II.  STATEMENT OF FACTS

### A.  The Parties

**Plaintiffs.**  Plaintiffs are purportedly individual investors who seek to recoup approximately $10.3 million in damages, punitive damages, and interest,[10] but they continue to fail to allege any detail regarding the nature of those losses.[11] Instead, the Complaint only vaguely alleges that the Plaintiffs each incurred unspecified "Martek losses,"[12] without reference to any particular (or general) securities purchases or sales or the dates upon which such losses were incurred. Plaintiffs also have each previously filed substantially the same suit against Martek and several of the Individual Defendants, and had their claims dismissed on the merits or on service of process grounds.

**Defendant Martek**.  Martek is a Delaware corporation headquartered in Maryland that develops nutritional supplements derived from microalgae – particularly, Docosahexaenoic Acid ("DHA"), a long-chain fatty acid, and Arachidonic Acid ("ARA"), which is derived from

---

[9] *Landsberger*, Compl. 1.

[10] Compl. 46.

[11] *See Landsberger* MTD at 2-3 (highlighting pleading deficiencies as to plaintiff).

[12] Compl. 45-46.

fungus.[13] On February 28, 2011, Martek's outstanding shares were acquired by a subsidiary of Koninklijke DSM N.V. ("DSM N.V."), and, as of that date, Martek became an indirect wholly-owned subsidiary of DSM N.V.[14]

**Individual Defendants**. Defendants Linsert, Jr., Buzy, Dubin and Flanagan are past or present officers and/or members of the Company's Board of Directors. Defendants Linsert, Jr., Buzy and Flanagan were defendants in each of the prior six actions brought by the Plaintiffs. Defendant Dubin, although he was not named in any of the first six complaints, was the subject of "motions to add an additional defendant" in the *Smith*, *Miles*, *Dale*, and *Landsberger* cases.[15] These motions were denied in *Dale* and *Landsberger*,[16] and never ruled upon in *Smith* and *Miles*.

**Defendant DSM North America**. DSM North America is a __ corporation headquartered in New Jersey, and is a wholly owned subsidiary of DSM N.V. (collectively, "DSM"). DSM produces components used by Martek to develop its DHA and/or ARA products.[17]

### B. The Allegations of the Complaint.

Plaintiffs' Complaint, as was the case with its predecessors, is far from a model of clarity. Nevertheless, what can be distilled from its four corners is essentially identical to the allegations that were asserted – and dismissed – in the prior iterations of this lawsuit.

---

[13] *See* Compl. 1-2 (alleging that Martek manufactures both DHA and ARA).

[14] *See* Compl. 2-3 (allegations regarding DSM purchase of Martek).

[15] *See Smith*, Mot. to Add Steve Dubin as an Additional Deft. [Dkt No. 13] (Dec. 31, 2009); *Miles*, Mot. to Add Steve Dubin as an Additional Deft. [Dkt No. 8] (Dec. 31, 2009); *Dale*, Mot. to Add Steve Dubin, Martek's CEO, as an Additional Deft. in this Compl. [Dkt No. 4] (Jan. 21, 2010); *Landsberger*, Mot. to Add Additional Deft. [Dkt No. 7] (Jan. 13, 2010).

[16] *See Dale*, 2010 WL 3038951, at *4 n.6; *Landsberger*, 2010 WL 3086317, at *4 n.5.

[17] *See* Compl. 3 (alleging that DSM supplies Martek with oils for the production of its DHA and ARA products).

Just as it was before, the crux of Plaintiffs' claims is that the Martek Defendants inflated the price of Martek stock by creating unrealistic expectations regarding the Company's growth potential.[18] And just as they did in their prior complaints, Plaintiffs attack essentially *all of Martek's public disclosures*,[19] alleging material misstatements and/or omissions by Martek related to the same or substantially similar issues raised previously,[20] including: (1) problems with the 2002 OmegaTech purchase and related patent litigation;[21] (2) a 2003 Hexane pollution problem at Martek's Winchester, KY, plant;[22] (3) hoarding of product by customers from 2002 to 2005;[23] (4) the alleged failure of Martek to obtain certain approvals from the National Academy of Sciences (the "NAS") and the Food and Drug Administration (the "FDA");[24] (5) the 2005 disclosure by Martek of hoarding of inventory by its customers;[25] (6) a supposedly flawed February 2006 8-K regarding a potential deal with Kellogg;[26] (7) various failures related to the incorporation of DHA-S into its products;[27] (8) problems with an NIH Alzheimer study;[28] and (8)

---

[18] *See generally* Compl. 1-5; *compare Landsberger* MTD at 4; *Csabai* MTD at 7.

[19] *See, e.g.*, Compl. at 3-4 (alleging that "*all* of Martek's aggressive information and disclosure to its investors," over the 17 years of its "public market existence," misrepresented "what was always a very limited market for Martek's products" (emphasis added)); *compare Csabai I*, Compl. 5 (Martek "fraudulently misrepresented nearly every aspect [of the Company from] . . . March of 2002 to the present, 2009); *Landsberger*, Compl. 1 (same).

[20] *See generally Landsberger* MTD at 4-7; *see also Csabai I* MTD at 7-11.

[21] *See* Compl. at 2A, 2, 8-10, 23-24, Ex. A at 3-5, Ex. A at 13-14.

[22] *See id.* at 36, Ex. A at 7,

[23] *See id.* at 2, 12, 23, 24, 29, Ex. A at 2, Ex. A at 12, Ex. A at 13

[24] *See id.* Ex. A at 6, Ex. A at 9-11,

[25] *See id.* at 2, 12, 23, 25, 29, Ex. A at 2, Ex. A at 12, Ex. A at 13

[26] *See id.* at 16.

[27] *See id.* at 1A, 2A, 8, 31, Ex. A at 8-9, Ex. A at 10-11, Ex. A at 14-15.

[28] *Id.* at 33-34.

\\\BA - 061954/000114 - 294932 v1

a supposed non-disclosure regarding a "failure" to achieve certain regulatory approvals with "the European version of the FDA, the EFSA."[29]

Indeed, a review of the Plaintiffs' "chronolog[y]" of alleged frauds committed by Martek[30] is instructive. Despite the dismissal of the prior complaints on limitations grounds, Plaintiffs' chronology fails to include any alleged misstatement or omission by Martek after 2008,[31] and appears to concede that by July 17, 2007, "information [that] Martek's investors might have been able to [use to] realize that that they ha[d] been aggressively defrauded for years," was available in the form of an opinion issued by the Fourth Circuit.[32] And to the extent there are any *new* allegations of misstatements or omissions by Martek in this Complaint, they relate to disclosures and non-disclosures occurring *prior* to 2002,[33] and are thus clearly barred by the applicable five-year statute of repose. It is as though the Plaintiffs, in filing their seventh Complaint, have simply wished away the fact that their claims are subject to a two-year statute of limitations and a five-year statute of repose.

Superficially, there is of course one "new" element to the Plaintiffs' Complaint: the presence of DSM as a named Defendant. However, the Complaint alleges only vaguely that the acquisition of Martek by DSM was somehow the "last phase" of the alleged 17-year insider enrichment scheme at the Company,[34] and fails otherwise to allege any actual participation by DSM in the numerous misstatements or omissions that have been alleged, or even knowledge by

---

[29] *Id.* at 36-37, Ex. A at 18-19.

[30] *See* Compl. Ex. A.

[31] *See id.* Ex. A at 19-20.

[32] *See id.* Ex. A at 20.

[33] *See id.* at 3A (allegations of fraudulent statements "from 1998 and on"), 4A (same), 7 (undisclosed risks in 1999 related to Wyeth GRAS claim questioned by FDA and use of n-hexane, a neurotoxin, as solvent), Ex. A at 1-2 (same)

[34] *Id.* at 6A, 2-3.

\\\BA - 061954/000114 - 294932 v1

DSM of the alleged falsity of those misstatements. This is not surprising, given that there is no allegation that DSM had any control of any kind over Martek or its public statements – nor would there be any basis for such an allegation – at any time prior to the filing of the Complaint.

## III.   ARGUMENT

Plaintiffs' seventh attempt to plead securities fraud against Martek is just as deficient as their first six, and should be dismissed with prejudice. *First*, Plaintiffs' claims are barred by principles of *res judicata*, because virtually identical claims asserted by three of these Plaintiffs have already been dismissed by this Court on statute of limitations grounds and/or for failure to plead the elements of securities fraud.[35] *Second*, the same statute of limitations grounds that provided the basis for dismissal of the *Csabai I*, *Dale*, *Landsberger*, warrants the dismissal of the instant Complaint as to all Plaintiffs. *Third*, Plaintiffs again have utterly failed to plead the elements of a claim for securities fraud against all of the Defendants. *Finally*, Plaintiffs' claims against DSM fail both because DSM is not alleged to have controlled (or even known of) the alleged misstatements and because there is no private right of action for aiding and abetting a violation of the securities laws. Accordingly, the Court should grant the Defendants' Motion and dismiss Plaintiffs' Complaint in its entirety.

### A.   Plaintiffs' Claims are Barred By *Res Judicata*.

Initially, Plaintiffs' claims are barred by the doctrine of *res judicata*. Under this doctrine, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[36] The doctrine applies

---

[35] As set forth below, while only the *Csabai I*, *Dale*, and *Landsberger* claims were dismissed on the merits, the unique circumstances of this case justify the extension of *res judicata* to the claims asserted by the Smith, Miles and Scardigno Plaintiffs.

[36] *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).

8

when there is: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits."[37] The purpose of the doctrine is "to protect litigants from the burden of relitigating identical issues, and to 'promote judicial economy by preventing needless litigation.'"[38] These purposes are well-served by the doctrine's application in this case – not only as to the claims of Csabai, Dale and Landsberger against Martek and the Individual Defendants who were named in the prior suits brought by those Plaintiffs, but as to the claims of *all Plaintiffs* asserted against *all Defendants*.

### 1. There Has Been a Final Judgment on the Merits in a Prior Suit.

The first requirement for the application of *res judicata* is easily satisfied. On December 23, 2009, this Court granted summary judgment to the Defendants in *Csabai I* on statute of limitations grounds.[39] On July 30, 2010, the Court similarly granted summary judgment to the Defendants in *Dale* and *Landsberger*, in part, on statute of limitations grounds.[40] It is well settled that "the dismissal of [a prior] action on statute of limitations grounds is an adjudication on the merits," for purposes of the application of the doctrine of *res judicata*.[41] Accordingly, the first requirement for the application of the doctrine is satisfied.

---

[37] *Frank v. Home Depot, U.S.A., Inc.*, 481 F. Supp. 2d 439, 442 (D. Md. 2007)

[38] *Jacobs v. Venali, Inc.*, 596 F. Supp. 2d 906, 913 (D. Md. 2009) (quoting *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008)).

[39] *Csabai I*, 2009 WL 5206477, at *2-3.

[40] *See Dale*, 2010 WL 3038951, at *4; *Landsberger*, 2010 WL 3086317, at *4.

[41] *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1180 (4th Cir. 1989). In addition, the dismissal of the prior Dale and Landsberger for failure to plead the elements of securities fraud is also a "judgment on the merits" for *res judicata* purposes. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).

### 2. *There is Identity of the Earlier and the Current Causes of Action*

So, too, is the second requirement for the application of *res judicata* easily met in this case. "The test for deciding whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment."[42] Even "[n]ewly articulated claims," if they are "based on the same [transactional] nucleus of facts," may "still be subject to a *res judicata* finding if the claims could have been brought in the earlier action."[43]

As set forth above, the instant Complaint and the six prior versions submitted by the Plaintiffs are, for all relevant purposes, identical. Both sets of complaints challenge the accuracy the same broad series of public disclosures by Martek (*i.e.*, all of them), and both focus on the same the same sets of events or occurrences that were allegedly misrepresented or concealed by Martek. Under these circumstances, there is no question that the allegations of the instant Complaint arises from the same common nucleus of facts alleged in the previous six iterations, and that *all* of them certainly "could have been brought in the earlier actions."[44] Accordingly, the second requirement for the application of *res judicata* has been met.

### 3. *There is an Identity or Privity of the Parties*

Finally, there is an identity or privity of the parties between the *Csabai I*, *Dale*, or *Landsberger* proceedings on the one hand, and the instant lawsuit on the other. "To be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to

---

[42] *Laurel Sand & Gravel*, 519 F. 3d at 162 (quoting *Pittston Co. v. United States,* 199 F.3d 694, 704 (4th Cir.1999)) (internal quotations marks omitted).

[43] *Id.*

[44] *See Longman v. Phys. Resource Group, Inc.*, No. Civ. A. 3:97-CV-3102L, 2003 WL 2224465, at *8 (N.D. Tex. Sept. 23, 2010) (defining "nucleus of operative facts" as "Defendants' alleged securities fraud during the period between September 15, 1995, and November 19, 1997).

former litigation that he represents precisely the same legal right in respect to the subject matter involved.'"[45] However, the Fourth Circuit has stressed that "privity is an elusive concept" – "merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."[46] While that court has articulated three "categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication: (1) a non-party who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action,"[47] it has also noted that privity should be determined on a "case by case basis."[48]

Here, there is no dispute that, at least as to Plaintiffs Csabai, Dale, and Landsberger, and Defendants Martek, Linsert, Buzy and Flanagan, the parties are identical and, accordingly, *res judicata* should apply. Moreover, as explained below, principles of *res judicata* also apply to the other parties in the current suit: Defendant Dubin; Defendant DSM North America; and Plaintiffs Smith, the Mileses and Scardigno.

**Defendant Dubin**. Although not formally a party to the *Csabai I*, *Dale*, or *Landsberger* proceedings, Defendant Dubin was the subject of a "motion to add as additional defendant" in both *Dale* and *Landsberger*, which the Court denied in issuing its opinions awarding summary

---

[45] *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005) (quoting *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir.1997)).

[46] *Id.* (quoting *Nash County Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 494 (4th Cir. 1981)).

[47] *Id.*

[48] *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010). Although the Fourth Circuit was applying Virginia law in *Brooks*, it noted that "the federal and state tests governing privity are virtually identical." *Id.*; *see also Shafer v. Hartman*, 2008 WL 5500757, at *1 (D. Md. Mar. 31, 2008) (applying federal test for privity and noting "[w]hether privity exists is determined on a case by case examination of the relationship and interests of the parties" (quoting *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007)).

11

judgment to the Defendants in those cases.  Under these circumstances, Defendants respectfully submit that Defendant Dubin was effectively a party to the *Dale* and *Landsberger* proceedings for purposes of the application of *res judicata*, and that therefore the Plaintiffs' claims against Defendant Dubin are barred.  In any event, "[g]enerally, an employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued."[49]  Particularly since the Complaint is bereft of any allegation of misconduct by Defendant Dubin,[50] the Court may find the CDL Plaintiffs' claims barred as to Defendant Dubin by *res judicata*.

**DSM North America**.  *Res judicata* also bars the CDL Plaintiffs' claims against DSM North America, to the extent DSM North America is named as a defendant solely as a result of its acquisition of Martek.  Since privity typically extends to a "successor-in-interest to a prior party" for *res judicata* purposes, the CDL Plaintiffs' claims against DSM North America are barred.

**Plaintiffs Smith, Miles and Scardigno**.  Finally, the Court should also find that Plaintiffs Smith, the Mileses and Scardigno are in privity with Plaintiffs Csabai, Dale and Landsberger for *res judicata* purposes.  Csabai purported to bring his original complaint on behalf of "11 other individuals, consisting of family, friends and business associates with the same complaint."[51]  Although ultimately these members of his "family, friends and business associates" – including Smith, the Mileses, and Scardigno – filed separate complaints, they did

---

[49] *Tibbetts v. Stempel*, 354 F. Supp. 2d 137, 148 (D. Conn. 2005) (quoting 18 *Moore's Fed. Practice* 3d. § 131.40(3)(f)).

[50] *See, e.g.*, *Wang v. Prudential Ins. Co. of Am.*, No. 3:09-cv-1309-O-BF, 2010 WL 1640182, at *2 (N.D. Tex. Apr. 2, 2010) (individual defendants in subsequent suit, whose only involvement in the case arises from their employment with defendant in prior suit, are in privity with employer for purposes of *res judicata*).

[51] *Csabai I*, Compl. 5.

so in clear coordination and the complaints themselves were virtually identical. Where, as here, privity turns on whether the current party was "adequately represented by a party to the original action," the Fourth Circuit requires that the "parties to the first suit" be "accountable to the nonparties who file a subsequent suit," and that the "party acting as a virtual representative for a nonparty [in the first suit] . . . do so with at least the tacit approval of the court."[52] Both are satisfied here, as the Court has long been aware of the coordination of these suits, and explicitly referred to Mr. Csabai's internet postings in awarding summary judgment in the *Dale* and *Landsberger* actions.[53] Under these circumstances, the fact that the *Smith*, *Miles* and *Scardigno* complaints were not dismissed on the merits – because they were never effectively served on any Defendant – should not operate to relieve these Plaintiffs from the *res judicata* bar, because the principles that drive the application of the doctrine, including the avoidance of relitigating identical issues and engaging in needless litigation,[54] support its application here in these circumstances.

### B.  Plaintiffs' Claims are Barred by Limitations

Even if Plaintiffs were to overcome the *res judicata* bar as to some or all of their claims (and they cannot), it remains the case – as the Court found in *Csabai I*, *Dale*, and *Landsberger* – that their claims are barred by limitations. For example, the Court has already found that "most of the fraudulent acts" asserted herein were barred by the five-year statute of repose applicable to federal securities claims.[55] The Court then found that the remainder of the allegations were barred by the two-year statute of limitations, because "most of the events . . . were matters of

---

[52] *Martin*, 407 F.3d at 651.

[53] *See Dale*, 2010 WL 3038951, at *3; *Landsberger*, 2010 3086317, at *4.

[54] *See Jacobs*, 596 F. Supp. 2d at 913.

[55] *Dale*, 2010 WL 3038951, at *3 & n.4 (citing 28 U.S.C. § 1658(b)); *see also Csabai I*, 2009 WL 5206477, at *2 n.6; *Landsberger*, 2010 WL 3086317, at *3.

13

public record and occurred more than two years before [the Plaintiff] filed suit," and in any event were the subject of "repeated[] post[ings]" by Plaintiff Csabai "on a publicly accessible internet message board in 2006 and 2007."[56] This Complaint challenges the *same Martek disclosures* that were challenged in the *Csabai*, *Dale*, and *Landsberger* complaints. Accordingly, Plaintiffs' claims are time-barred.

### C. Plaintiff Has Not Stated A Claim Upon Which Relief Can Be Granted.

If the Court declines to dispose of this case on *res judicata* or limitations grounds, then it should dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth in the *Csabai I* MTD and *Landsberger* MTD (with regard to substantially identical allegations to those at issue here), Plaintiffs have utterly failed to plead the elements of a claim for securities fraud. There, as here, Plaintiffs as a matter of law failed to allege any connection between any misrepresentation and their alleged losses, failed to allege transaction loss, failed to allege loss causation, failed to allege reliance, failed to allege material misstatements or omissions, and failed to properly allege scienter.[57] This Court agreed, concluding in both *Dale* and *Landsberger* that the Plaintiffs' pleading deficiencies "include[d], but [were] not limited to, a failure to adequately plead scienter, loss causation and reliance."[58] These same deficiencies plague the instant Complaint, for reasons largely identical to those asserted in the *Csabai I* and *Landsberger* MTDs. Accordingly, the Court should dismiss Plaintiffs' Complaint for failure to properly plead the elements of securities fraud.

---

[56] *Dale*, 2010 WL 3038951, at *3; *see also Landsberger*, 2010 WL 3086317, at *4.

[57] *See Csabai I* MTD 20-27; *Landsberger* MTD 11-18.

[58] *Landsberger*, 2010 WL 3086317, at *4; *see also Dale*, 2010 WL 3038951, at *4 n.5 ('Ms. Dale has failed to sufficiently plead the elements of a private securities fraud claim, including, at the very least, scienter, loss causation, and reliance.").

14

### D. Plaintiffs' Claims Against DSM North America are Defective for Additional and Independent Reasons.

As set forth above, Plaintiffs' claims fail because they are barred by *res judicata*, barred by the statute of limitations, and do not adequately plead the elements of securities fraud. All of these deficiencies merit dismissal against all Defendants. However, Plaintiffs' claims against DSM fail for additional and independent reasons.

Plaintiffs fail to allege that DSM played any role in making any of the statements or omissions at issue, or in causing those statements to be false. "Section 10(b) requires that a defendant act deceptively in order to fall within the coverage of the statute. Deceptive acts include misstatements, omissions by those with a duty to disclose, manipulative trading practices, and deceptive courses of conduct."[59] Plaintiffs fail to allege any such deceptive conduct by DSM North America. Instead, Plaintiffs appear to suggest that by purchasing Martek (at "reasonable value," no less), DSM North America may have somehow aided and abetted Martek's fraud, but the Supreme Court has repeatedly made clear that there is no aider and abettor liability for private claims brought under the federal securities laws.[60]

### III. CONCLUSION

The PSLRA sets "'a high standard of pleading which if not met results in mandatory dismissal'"; therefore, the PSLRA generally "'does not contemplate amending complaints.'"[61] Indeed, the PSLRA would not achieve its purpose to "'provide a filter at the earliest stage (the

---

[59] *S.E.C. v. Pirate Investor LLC*, 580 F.3d 233, 239-40 (4th Cir. 2009).

[60] *See, e.g.*, *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 166-67 (2008); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 191 (1994).

[61] *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 722 (E.D. Va. 2003) (quoting *Champion Enters., Inc. Sec. Litig.*, 145 F. Supp. 2d 871, 872 (E.D. Mich. 2001)).

15

pleading stage) to screen out lawsuits that have no factual basis' if Plaintiffs 'were allowed to amend and amend until they got it right.'"[62]

Plaintiffs have filed a seventh Complaint that simply parrots the allegations of the first six – in blatant disregard of the Court's preclusive dismissals in *Csabai I*, *Dale*, and *Landsberger*[63] - and provides no basis for the Court to conclude that those deficiencies can be corrected. The Court therefore should effectuate the intent of the PSLRA and dismiss the Complaint with prejudice or, in the alternative, award summary judgment to the Defendants.

Dated: March 29, 2011

Respectfully submitted,

/s/
Mark D. Gately (Bar #00134)
Scott R. Haiber (Bar #25947)
Andrea W. Trento (Bar #28816)
HOGAN & HARTSON LLP
Harbor East
100 International Drive
Baltimore, MD  21202
Phone:      (410) 659-2700
Facsimile:  (410) 659-2701

*Attorneys for Defendants Martek Biosciences Corp., Henry Linsert, Jr., Peter L. Buzy, Steve Dubin, Robert J. Flanagan, and DSM North America*

---

[62] *Id.* at 722-23 (quoting *Champion*, 145 F. Supp. 2d at 873, 877).

[63] In relevant part, Rule 11 of the Federal Rules of Civil Procedure prohibits the filing of claims that are not "warranted by existing law" or are otherwise "[]frivolous," Fed. R. Civ. P. 11(b)(2), and provides for the imposition of sanctions – including the payment of a "penalty into court," or of "the reasonable attorney's fees and other expenses" incurred by the defendants "directly resulting from the violation" the Rule, *see id.* R. 11(c)(4). Defendants are prepared to seek appropriate relief under Rule 11, should Plaintiffs continue to assert claims that – in light of the Court's prior rulings in these matters – are clearly frivolous.